## Crawford v. Commonwealth.

(Decided December 6, 1911.)

Appeal from Livingston Circuit Court.

Criminal Law—Confederating—Sufficiency of Evidence.—In a prosecu-
tion under section 1241a, Kentucky Statutes, for banding and con-
federating together, for the purpose of intimidating another, evi-
dence examined and held insufficient to sustain a conviction.

C. H. WILSON and G. W. LANDRUM for appellant.

JAS. BREATHITT, Attorney General and C. H. MORRIS for ap-
pellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Reversing.

In the Spring of 1910, one B. B. Wright, a resident of
Livingston County, Kentucky, was engaged in building
a house on his farm to be occupied by certain tenants by
the name of Malott. On Thursday night preceding
Easter Sunday, a prop was removed from the house and
it was let down on one end. The next morning Wright
found the following notice posted on his gate: "B. B. M.
Wright: You had better not do no more to the house; you
had better not think we won't get you, for we sure will."
On the following Sunday night Wright's barn was
burned.

On April 16th, 1910, the grand jury of Livingston
County returned true bills against Woodson Crawford,
John Crawford, Jewell Robertson and James Elliston,
charging them with the crime of banding and confered-
ating themselves together for the purpose of intimidat-
ing Wright, contrary to section 1241a, Kentucky Stat-
utes. On September 6th, of the same year, the grand
jury returned an indictment against George Crawford
and Roy Crawford for the same offense. The indict-
ment charges them with taking part in the same trans-
action for which Woodson Crawford and others were
previously indicted.

By agreement all the defendants were tried together.
Jim Elliston, who testified for the Commonwealth, was
acquitted upon a peremptory instruction by the court.
The defendants, George Crawford, Roy Crawford,
Woodson Crawford and Jewell Robertson, were con-
victed and their punishment fixed at confinement in the

penitentiary for the term of one year. Each of the defendants filed motion and grounds for a new trial. The motion was sustained as to George Crawford, but overruled as to all the other defendants. From the judgment of conviction the other defendants appealed. Roy Crawford, John Crawford and Jewell Robertson subsequently abandoned their appeals, and the case is, therefore, here upon the appeal of Woodson Crawford alone.

Wright testified to the fact that Woodson Crawford was at his house on several occasions just prior to the letting down of the house and the burning of the barn. It seems, however, that Wright had a double tree and some clevices belonging to Crawford, and Crawford came there for the purpose of getting them. He also called at the house where Wright and one of his men were at work and got the hired hand to go with him for the purpose of assisting him in castrating a bull calf. Woodson Crawford assisted Wright and his hired hand on several occasions when he was present in the work of building the house, though they claim that his assistance did not amount to much. Wright claims that on one occasion he had a talk with Woodson Crawford. He details the conversation as follows:

"Q. Woodson Crawford had some talk with you about that. What was that?"

"A. He said they ought to be bummed out of the country."

"Q. Said the Malotts ought to be bummed out of the country?"

"A. Yes, sir; bummed out of the country."

"Q. Did he say anything about that you ought not to employ them?"

"A. He said people could not keep tools around on their farms; that they would carry off monkey-wrenches and things like that."

"Q. When was that he had that talk with you?"

"A. I could not give the date; but just a short time before this work was done."

"Q. A short time before you found the note?"

"A. Before I found the note and the house was prized up. I was at work on the house at the time he talked to me."

John Kimberland testified to a conversation he had with Woodson Crawford, wherein Crawford said a notice ought to be posted for the Malotts. On Tuesday night, after the fire, Woodson came to Wright's house and re-

marked that it was too bad that Barney had lost his barn. George Snow, a witness for the Commonwealth, testified that Woodson spoke to him about the Malotts coming there. In this conversation he said he didn't know what Wright wanted with them; he didn't know why he wanted them there; or something of that kind. In using this language he appeared to be in a perfectly good humor. Jim Alliston, one of the band, who turned State's evidence, testified to his being sworn in as a night rider, and to the fact that George Crawford, John Crawford, Roy Crawford and Jewell Robertson went with him to the house Wright was building on the Thursday night preceding Easter Sunday, and that they removed a prop from under the house. On the same night they put the notice on the gate post. Dallas Malott testified as follows with reference to Woodson Crawford:

"Q. Did any of the rest ever talk to you about it?"

"A. No, sir; not about the night riders."

"Q. Any of them ever talk to you about going there to work for Barney?"

"A. Yes, sir; me and Woodson Crawford had a talk about it; he said he was satisfied I could do better at old man Gray's; said Mr. Snow's boys had worked there several years and had never made anything there; that they had been beat out of all they made, and was satisfied I would make more at old man Gray's than I would at Barney's."

It will thus be seen that not a single witness testifies to the fact that Woodson Crawford was a member of the band, or that he was present either when the house was let down and the notice was posted, or when the barn was burned on Sunday night. Nor does any witness testify to any remarks made by Woodson, or to any acts of his which tend in the least degree to show that he was guilty of confederating with the others. On the contrary, the evidence tends to show that Woodson was on friendly terms with his neighbor, B. B. Wright, and that they frequently borrowed things from each other. Not only does the evidence tend to show that he was not present, either on Thursday night or Sunday night, but defendant shows by a number of witnesses that he was elsewhere on the night the barn was burned, in fact, several miles distant.

Our conclusion is that there was not sufficient evidence tending to establish appellant's guilt, and that the

court should have peremptorily instructed the jury to find him not guilty.

Judgment reversed and cause remanded for further proceedings consistent herewith.